UNITED STATES DISTICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
JOSEPH ALLEN WITHERSPOON                          :   Civ No.:
                                                  :
                        Plaintiff,                :
                                                  :
       -against-                                  :   **COMPLAINT**
                                                  :
                                                  :
                                                  :
                                                  :   **(JURY TRIAL DEMANDED)**
                                                  :
ARCHCARE COMMUNITY SERVICES, INC. d/b/a           :
ARCHCARE, ST. VINCENT DE PAUL                     :
RESIDENCE,  and JEREMY SANTANA, individually:     
                                                  :
                                                  :
                        Defendants.               :
------------------------------------------------------------------X

     Plaintiff, Joseph Witherspoon ("hereinafter "Plaintiff" or "Witherspoon"), by and through her attorneys, L & D LAW P.C (*Liggieri & Dunisha*), complaining of Defendants, jointly and severally, herein respectfully shows to this Court and alleges the following:

## PARTIES

1. Plaintiff Joseph Witherspoon is an African American man who resides in the State of New York, Westchester County.

2. Plaintiff Joseph Allen Witherspoon (hereinafter referred to as Plaintiff or "Plaintiff Witherspoon") is seeking damages to redress the injuries he has suffered as a result of being discriminated against by his employer on the basis of racial discrimination, gender discrimination, hostile work environment, retaliation and unlawful termination.

3. The above claims are brought pursuant to a federal question under Title VII of the Civil Rights Act of 1964,  and to remedy violations of the law under the New York State Constitution and the New York City Administrative Code, based upon diversity and the

1

supplemental jurisdiction of this Court, pursuant to Gibb, 38 U.S. 715 (1966) and 28 USC 1367, seeking relief and damages to redress the injuries Plaintiff has suffered as a result of being discriminated against and retaliated against which culminated in an unlawful termination.

4. At all times material, Plaintiff worked as a dietary aid for the Defendant in their nursing home facility in the Bronx, NY. Plaintiff's duties included but were not limited to making minor food preparations, moving food, preparing silverware, making sure residents were fed etc.

5. At all times material, Defendant St. Vincent De Paul Residence is a domestic corporation that is a nursing home and provides nursing home service for the elderly with an establishment for the purpose of business transaction located at 900 Interval Avenue, Bronx, NY 10459.

6. At all times material, Archcare Community Services, Inc.,d/b/a Archcare (hereinafter "Archcare") was and is a domestic not-for-profit corporation, that is authorized and does conduct business in the State of New York.

7. Upon information and belief, Archcare owns and operates Defendant St. Vincent De Paul Residence as a subsidiary corporation and/or St. Vincent De Paul Residence serves as an arm and agent of Archcare.

8. Archcare and St. Vincent De Paul Residence were joint employers of the Plaintiff.

9. At all times material, Defendant Jeremy Santana (hereinafter referred to as "Santana") is a Hispanic male and a supervising employee of Defendant St. Vincent De Paul Residence (hereinafter referred to as "Defendant").

10. At all times material, Defendant Santana had direct supervisory authority over Plaintiff with regard to his employment, including but not limited to the ability to hire and fire along with other tangible employment actions.

## PROCEDURAL HISTORY & VENUE

11. On or about October 11, 2022, Plaintiff filed a charge of racial discrimination, gender discrimination, hostile work environment, retaliation and unlawful termination with the Equal Employment Opportunity Commission ("EEOC").

12. On or about March 6, 2023, the EEOC issued a Right to Sue letter allowing the Plaintiff to file a lawsuit against the Defendant(s) under federal laws in federal court.

13. This lawsuit is being filed within receipt of the 90-day EEOC Right to Sue provision.

14. At all times material, Plaintiff resides in the Southern District, all Defendants conduct business in the Southern District, and all acts giving rise to this Complaint, occurred within the Southern District.

## FACTS

15. In or around October of 2021, Defendants hired the Plaintiff as a Dietary Aide.

16. Plaintiff is an African American male who is a resident of New Rochelle, Westchester County.

17. At all times material, Plaintiff worked for the Defendants in their nursing home facility in the Bronx, NY.

18. Plaintiff was happy he had found a good job which enabled him to support his family.

19. Plaintiff quickly adapted to his schedule and duties as per his managers' requests and completed each task promptly and assiduously.

20. As soon as Plaintiff started working for Defendant St. Vincent De Paul Residence, Plaintiff noticed the disparate treatment of African American employees as compared to Hispanic employees.

21. Plaintiff noticed that the Hispanic employees would spend their free time exclusively with one another, communicating only in Spanish and ostracizing non-Hispanic employees.

22. In addition, Plaintiff also noticed that since there was not enough silverware for two shifts at a time which led to silverware shortages. As a result, residents were forced to wait for their meals until other residents were finished eating so that the limited supply of silverware could be cleaned and reused. This was a major issue which caused tension among staff members.

23. In essence, the Hispanic employees would work together on a shift, and in concert, they would remove all of the silverware from the dishwasher and hide the silverware. The purpose for doing this was to have the silverware ready and in hand for when they served the residents. However, as a result of hiding silverware, other employees who were not Hispanic, were forced to run around the entire facility looking for whatever silverware they could find in order to serve the residents. Unbeknownst to many of the non-Hispanic employees, the silverware was simply hidden, so that the Hispanic employees could do the job faster and perform less work. However, this was done to the detriment of all of the other employees and caused long wait times and frustration for residents simply looking to have a meal.

24. The hoarding of the silverware by the Hispanic employees caused major issues in the correct preparation and distribution of the silverware for the next shift. Without enough silverware other employees were helpless when it came to food distribution.

25. In or around October of 2021, one of Defendants' employees, Jennifer Lanos, a Latina/Hispanic female went directly to Defendants' Manager Jeremy Santana (who is of

Hispanic descent) to false accuse the Plaintiff of hoarding silverware. Even though protocol was for Lanos to speak with Defendants' direct Floor Manager, Dennis (an African American) regarding silverware issues, Lanos decided to only speak with Hispanic supervisors.

26. Instead of conducting a proper investigation or delegating such an investigation to the Floor's direct Manager, Dennis; Defendants' Manager Santana took it upon himself to inquire about the missing silverware.

27. In an accusatory manner, Defendants' Manager Santana blamed the Plaintiff for the missing silverware and berated him profusely over the issue.

28. The Plaintiff used this chance to immediately file a protected complaint about race, to describe the circumstances regarding the missing silverware and too explain how the Hispanic employees hoarded the silverware, thus leaving non-Hispanic employees to fend for themselves.

29. Defendants' Manager Santana responded stating "Don't worry about them, worry about you!"

30. However, the Plaintiff had previously gathered direct evidence of the hoarding and presented Defendants' Manager Santana with a photo of Jennifer Lanos hiding and hoarding silverware.

31. Defendants' Manager Santana ignored the Plaintiff's complaints and shortly thereafter approached <u>the only other African American employee</u> working that shift, Pearl Dehaney, and proceeded to also accuse her of hoarding and hiding silverware.

32. Pearl Dehaney denied hoarding any silverware but that did not matter to Defendants' Manager Santana, who took it upon himself to lay blame with the only two African American employees, despite having no evidence of guilt.

33. Upon information and belief, after the exchange with the Plaintiff and Pearl Dehaney, Defendants' Manager Santana decided to close the investigation without any further inquiry, in an attempt to shield the Hispanic employees from any liability or disciplinary action.

34. As demonstrated above, Defendants' Manager Santana discriminated against the Plaintiff by treating the Plaintiff disparately on account of his race.

35. Soon thereafter, Plaintiff would again complain to Defendants' Manager Santana about the disparate treatment Defendants were subjecting the Plaintiff on account of race. However, these protected complaints fell on deaf ears.

36. In fact, Defendants' Manager Santana did not do anything to resolve this issue and/or open any investigation for these allegations for the duration of Plaintiff's employment with Defendant St. Vincent DePaul Residence.

37. In the weeks that followed, Plaintiff noticed that he was always assigned to serve the fifth and sixth floors. The fifth and sixth floors were the only two floors operated by the Defendants. However, all other teams, made up primarily of Hispanic employees, were only given a single floor to serve and routinely performed less work than their non-Hispanic counter-parts.

38. The Plaintiff also noticed that Defendants' Manager Santana always paired him with other African American employees to serve said floors and to perform much more work than Plaintiff's Hispanic counter-parts.

39. When the Plaintiff asked Defendants' Manager Santana if he could be assigned to work another floor since his team had <u>double the work</u> of all other teams, Defendants' Manager Santana ordered him to adhere to the schedule.

40. Upon information and belief, Defendants' Manager Santana retaliated against the Plaintiff by reassigning his station because he filed a protected complaint.

41. Defendants' Manager Santana retaliated and discriminated against the Plaintiff based on his race by assigning him to the hardest and busiest floors, which required him to perform double the amount of work compared to his Hispanic counter-parts.

42. In addition, Hispanic co-workers continued to hoard the silverware and would magically produce silverware for their own shifts, while at the same time, Plaintiff was forced to wait for the dirty dishes to be collected and cleaned, so he could prepare his share of the silverware. As a result of the above, Defendants forced the Plaintiff to work many more hours than his Hispanic counter-parts, just so that Plaintiff could complete the same job.

43. In or around October of 2021, the Plaintiff complained to Defendants' Manager Santana that Jennifer Lanos was disturbing the residents as well as fellow staff by being too loud.

44. Rather than reprimand Jennifer Lanos for being too loud or investigate Plaintiff's claims, Defendants' Manager Santana retaliated against the Plaintiff.

45. Defendants' Manager Santana instructed the Plaintiff that Jennifer Lanos was not loud and ordered the Plaintiff to wash the dishes; a chore which was never previously assigned to the Plaintiff, nor included in his job duties as a dietary aide.

46. To add insult to injury, Defendants' Manager Santana ordered the Plaintiff not to use the steel wool soap pads while washing the pans, making the job wildly more difficult. In essence, this would be like asking an employee to scrub a floor with a toothbrush instead of a mop.

47. As the Plaintiff washed dishes, Jennifer Lanos and the other Hispanic employees openly laughed at the Plaintiff and mocked the Plaintiff for washing dishes.

48. Shortly thereafter, while the Plaintiff was having a conversation with one of the cooks, Jennifer Lanos came from behind and assaulted the Plaintiff by striking Plaintiff on the back.

49. The Plaintiff was immediately struck by pain, not only because the blow was hard, but because

the Plaintiff was involved in a car accident which has left him with six (6) slipped spine discs and two herniations.

50. Although Lanos observed that the Plaintiff was visibly in pain, she immediately burst into loud laughs and returned to the group of Hispanic employees, leaving the Plaintiff dumbfounded by what just occurred.

51. Plaintiff further noticed that the cook was as shocked as the Plaintiff by what had just occurred.

52. Immediately after the incident, Plaintiff headed to the Defendants' direct Floor Supervisor Dennis, and informed him about Lanos' assault.

53. Plaintiff was left to fend for himself in a hostile work environment where his complaints were dismissed, or worse, were used as cause to retaliate against him.

54. In addition, when Plaintiff was hired by the Defendants, Plaintiff informed Defendants' Supervisor Santana, that by way of Court Order, Plaintiff could only see his children during the weekends.

55. Throughout Plaintiff's employment, Plaintiff would ask Defendants' Manager Santana if he could take a day off during the weekend to see his children.

56. However, during Plaintiff's entire tenure of employment with Defendants, Defendants' Manager Santana denied the Plaintiffs request for any days off during the weekends.

57. Conversely, other employees of Hispanic origin, were always allowed to take the weekends off.

58. In fact, Plaintiff noticed that two newly hired, similarly situated, Hispanic employees were permitted to take off weekends, even though the Plaintiff had seniority and more time on the job.

59. On or about December 21, 2021, Defendants' Manager Santana called Plaintiff and offered

him an early shift. Plaintiff did not want to accept it, but Defendants' Manager Santana then ordered the Plaintiff to take the shift, leaving him no choice in the matter.

60. Despite protestations, Plaintiff worked the shift as ordered by Defendants' Manager Santana.

61. Plaintiff asked for help from a seasoned co-worker named Violeta, however when Defendants' Manager Santana observed Violeta helping the Plaintiff, he immediately ordered her to stop.

62. Defendants' Manager Santana's retaliatory conduct and mistreatment against Plaintiff caused the Plaintiff to have high anxiety.

63. Notably, the above action and all other actions taken against the Plaintiff happened only after Plaintiff complained of disparate treatment on account of race.

64. In view of the situation, Plaintiff felt as though he was being set up to fail.

65. By the end of the shift, Defendants' Manager Santana approached the Plaintiff and asked him what he thought about the shift.

66. The Plaintiff did not want to lose his job and he did not want to antagonize Defendants' Manager Santana. In fear of losing his job, Plaintiff simply responded, "*It was something.*"

67. Defendants' Manager Santana antagonized the Plaintiff and sarcastically told him "*The way you handled this shift, I am going to give you some extra shifts*".

68. On or about December 23, 2022, two days after, Defendants' Manager Santana terminated Plaintiff's employment through a text message.

69. As a result of Defendants' conduct, Plaintiff was left in a state of depression and hopelessness.

70. As a result of Defendants' actions, Plaintiff Witherspoon felt extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

71. As a result of Defendants' discriminatory and intolerable treatment, Plaintiff Witherspoon

suffered and continues to suffer severe emotional distress.

72. As a result of the acts and conduct complained of herein, Plaintiff Witherspoon has suffered and will continue to suffer the loss of income, the loss of a salary, bonuses, benefits and other compensation which such employment entails.

73. Plaintiff Witherspoon has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

74. As Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff Witherspoon demands Punitive Damages against Defendant.

75. The above are just some of the examples of unlawful and discriminatory conduct to which Defendant subjected Plaintiff Witherspoon.

## **AS AND FOR A FIRST CAUSE OF ACTION**
## **DISCRIMINATION UNDER TITLE VII**
## **(Not Against Individual Defendants)**

76. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

77. Title VII states in relevant part as follows:
    a) Employer practices:
    b) It shall be an unlawful employment practice for an employer:
        i) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin;

78. This claim is authorized and instituted pursuant to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section(s) 2000e et seq., as amended, for relief based upon the unlawful employment practices of the above-named Defendants. Plaintiff complains of Defendants' violation of Title VII's prohibition against discrimination in employment based, in whole or in

part, upon an employee's race.

79. Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. 2000e et seq., by terminating and otherwise discriminating against Plaintiff as set forth herein on account of Plaintiff's race.

## AS A SECOND CAUSE OF ACTION
## FOR DISCRIMINATION UNDER TITLE VII
## (Not Against Individual Defendants)

80. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

81. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e-3(a) provides that it shall be unlawful employment practice for an employer:

"(1) to . . . discriminate against any of his employees . . . because she has opposed any practice made an unlawful employment practice by this subchapter, or because she has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

82. Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. 2000e seq. by discriminating against Plaintiff with respect to the terms, conditions or privileges of employment because of his opposition to the unlawful employment practices of Defendants.

## AS A THIRD CAUSE OF ACTION
## FOR DISCRIMINATION
## UNDER STATE LAW

83. Executive Law § 296 provides that "1. It shall be an unlawful discriminatory practice:
    i) "(a) For an employer or licensing agency, because of an individual's age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

84. Defendants engaged in an unlawful discriminatory practice by discriminating against the Plaintiff as set forth herein.

85. Plaintiff hereby make a claim against Defendants under all of the applicable paragraphs of Executive Law Section 296.

### AS A FOURTH CAUSE OF ACTION FOR DISCRIMINATION UNDER STATE LAW
### (As Against Individual Defendants)

86. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

87. New York State Executive Law §296(6) provides that it shall be an unlawful discriminatory practice:

   a) "For any person to aid, abet, incite compel or coerce the doing of any acts forbidden under this article, or attempt to do so."

88. Defendants engaged in an unlawful discriminatory practice in violation of New York State Executive Law §296(6) by aiding, abetting, inciting, compelling and coercing the discriminatory conduct.

### AS FOR A FIFTH CAUSE OF ACTION FOR DISCRIMINATION UNDER STATE LAW
### (As Against All Defendants)

89. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

90. New York State Executive Law §296(7) provides that it shall be an unlawful discriminatory practice:

   a) For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because [s]he has opposed any practices forbidden under this article."

91. Defendants engaged in an unlawful discriminatory practice by discharging, retaliating, and otherwise discriminating against the Plaintiff because of Plaintiff's opposition to the unlawful employment practices of Plaintiff's employer.

### AS A SIXTH CAUSE OF ACTION FOR DISCRIMINATION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE
### (Not Against Individual Defendants)

92. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

93. The Administrative Code of City of NY § 8-107 [1] provides that "It shall be an unlawful discriminatory practice: "(a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, sexual orientation or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

94. Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(l)(a) by creating and maintaining discriminatory working conditions, and otherwise discriminating against the Plaintiff as set forth herein.

**AS A SEVENTH CAUSE OF ACTION FOR DISCRIMINATION
UNDER THE NEW YORK
CITY ADMINISTRATIVE CODE
<u>(Not Against Individual Defendants)</u>**

95. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

96. The New York City Administrative Code Title 8, §8-107(l)(e) provides that it shall be unlawful discriminatory practice: "For an employer… to discharge … or otherwise discriminate against any person because such person has opposed any practices forbidden under this chapter..."

97. Each of the Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(l)(e) by discriminating against the Plaintiff because of Plaintiffs opposition to the unlawful employment practices of Plaintiffs employer.

**AS AN EIGHTH CAUSE OF ACTION FOR DISCRIMINATION
UNDER THE NEW YORK
CITY ADMINISTRATIVE CODE
<u>(As Against Individual Defendants)</u>**

98. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs

of this Complaint as if more fully set forth herein at length.

99. New York City Administrative Code Title 8-107(19) Interference with protected rights. It shall be an unlawful discriminatory practice for any person to coerce, intimidate, threaten or interfere with, or attempt to coerce, intimidate, threaten or interfere with, any person in the exercise or enjoyment of, or on account of his or her having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected pursuant to this section.

100. Defendants violated the section cited herein as set forth.

## AS A NINTH CAUSE OF ACTION
## FOR DISCRIMINATION UNDER
## THE NEW YORK CITY ADMINISTRATIVE CODE
### (As Against Individual Defendants)

101. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

102. The New York City Administrative Code Title 8, §8-107(6) provides that it shall be unlawful discriminatory practice: "For any person to aid, abet, incite, compel; or coerce the doing of any of the acts forbidden under this chapter, or attempt to do so."

103. Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(6) by aiding, abetting, inciting, compelling and coercing the above discriminatory, unlawful and retaliatory conduct.

## AS A TENTH CAUSE OF ACTION
## FOR DISCRIMINATION UNDER
## THE NEW YORK CITY ADMINISTRATIVE CODE
### (Not Against Individual Defendants)

104. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

105. New York City Administrative Code Title 8-107(13) Employer liability for discriminatory conduct

by employee, agent or independent contractor.

    a. An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of any provision of this section other than subdivisions one and two of this section.

    b. An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of subdivision one or two of this section only where:

        (1) the employee or agent exercised managerial or supervisory responsibility; or

        (2) the employer knew of the employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action; an employer shall be deemed to have knowledge of an employee's or agent's discriminatory conduct where that conduct was known by another employee or agent who exercised managerial or supervisory responsibility; or

        (3) the employer should have known of the employee's or agent's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct.

106. Defendants violated the section cited herein as set forth.

## RELIEF DEMANDED

**WHEREFORE**, Plaintiff demands the following relief jointly and severally against all Defendants:

    (a) a declaration that Defendants violated Plaintiff's federal and state civil rights;

(d) compensatory damages for the injuries suffered by Plaintiff by reason of Defendants' unlawful and unjustified conduct, in an amount just and reasonable and in conformity with the evidence at trial in an amount to be determined at trial;

(c) punitive damages against the individual Defendants assessed to deter such intentional and reckless deviations from well-settled constitutional standards, to the extent allowable by law;

(d) damages for emotional distress, lost wages, back pay, front pay, statutory damages, medical expenses, interest;

(d) reasonable attorneys' fees and costs pursuant to all federal, state, city and all other applicable laws; and

(e) such other and further relief as appears just and proper.

## JURY DEMAND

**Plaintiff hereby demands a trial by jury on all issues properly triable thereby**

Dated: New York, NY
April 26, 2023

                              **L & D LAW P.C.**

                              _____/s/_____
                              Paul Liggieri, Esq.
                              11 Broadway, Suite 615
                              New York, NY 10004
                              (212) 374-9786
                              *Attorneys for Plaintiff*